1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                              San Francisco Division

11   SORRELL SHIFLETT, by and through          Case No. 21-cv-07802-LB
     guardian ad litem KELLEY DAVENPORT,
12
                      Plaintiff,                **DISCOVERY ORDER**
13
            v.                                  Re: ECF No. 75
14
     CITY OF SAN LEANDRO, et al.,
15
                      Defendants.
16

17                        **INTRODUCTION AND STATEMENT**

18        The plaintiff sued the City of San Leandro and two police officers, Anthony Pantoja and

19   Ismael Navarro, claiming excessive force and other civil-rights violations arising from Officer

20   Navarro's allegedly tasing him and Officer Pantoja's allegedly striking him with a baton.[1] The

21   City terminated Officer Pantoja's employment. It produced part of his termination file but

22   withheld six documents on the grounds that they are not relevant, not proportional to the needs of

23   the case, and protected by the official-information and deliberative-process privileges: (1) his

24   attorney's letter to the City to appeal the termination; (2) the Alameda County District Attorney's

25   "Final Report on Bettencourt OIS," which was an incident on August 5, 2020, involving a

26

27   ───────────────────────

28   [1] Am. Compl. – ECF No. 35. Citations refer to material in the Electronic Case File (ECF); pinpoint
     citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

1   shooting by Officer Pantoja; (3) the City's "Notice of Discipline" letter and Officer Pantoja's

2   acknowledgement of that letter; (4) the Oakland Police Department's investigative report; (5) the

3   City's letter to Officer Pantoja titled "Notice of Intent to Impose Discipline;" and (6) the OIR

4   group's administrative-investigation report.[2] The parties now dispute whether these documents

5   must be produced; the plaintiffs contend that they are relevant and discoverable. The defendants

6   must produce the files.

7                                          **ANALYSIS**

8   **1. Relevance**

9        Rule 26 establishes the bounds of civil discovery:

10           Parties may obtain discovery regarding any nonprivileged matter that is relevant to
             any party's claim or defense and proportional to the needs of the case, considering
11           the importance of the issues at stake in the action, the amount in controversy, the
             parties' relative access to relevant information, the parties' resources, the importance
12           of the discovery in resolving the issues, and whether the burden or expense of the
             proposed discovery outweighs its likely benefit.
13

14  Fed. R. Civ. P. 26(b).

15       "The relevance standard is extremely broad, especially in civil rights excessive force cases."

16  *James v. Hayward Police Dep't*, No. 13-cv-01092-SI, 2017 WL 2437346, at *1 (N.D. Cal. Feb.

17  27, 2017). In *James*, for example, the court ordered production of an officer's personnel-file

18  records of other excessive-force investigations, disciplinary records, complaints, performance

19  evaluations, and commendations, including records for the two-year period following the incident.

20  *Id.* at *1–2. The court excluded from production the officer's recruiting documents, application,

21  psychological evaluations, and records of arrests. *Id.* at 2. The officer's personal privacy was

22  protected by a protective order. *Id.*

23       The defendants contend that post-incident records are not relevant or proportionate to the

24  needs of the litigation.[3] But *James* ordered production of post-incident records and held that they

25  were relevant to the remaining claim of excessive force. *Id.* at *1–2. They are relevant to the

26

27  _____
    [2] Joint Disc. Letter Br. – ECF No. 76-3 at 1.

28  [3] *Id.* at 4.

excessive-force claim, the *Monell* claim, and potentially credibility. *T.D.P. v. City of Oakland*, No. 16-cv-04132-LB, 2017 WL 3026925, at *3 (N.D. Cal. July 17, 2017) (ordering production of personnel records because they were relevant to the *Monell* claim). The defendants also suggest that the plaintiff can subpoena the DA's office and the Oakland police department directly.[4] The defendants identify no burden to produce the documents, and it would create unnecessary inefficiencies to require the plaintiff to subpoena them himself.

### 2.   Official-Information and Deliberative-Process Privileges

The City also asserts the official-information and deliberative-process privileges as grounds to withhold the documents.[5] It has the burden to demonstrate that the privileges apply. *Martin v. Evans*, No. C 08-4067 JW (MEJ), 2012 WL 1894219, at *2 (N.D. Cal. May 23, 2012) (addressing official-information privilege: "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question.") (quoting *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988)). It has not met its burden.

### 2.1   Official-Information Privilege

Federal common law recognizes a qualified privilege for official information. *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033–34 (9th Cir. 1990), and collecting other cases). "In the context of civil rights suits against police departments, this balancing approach should be moderately pre-weighted in favor of disclosure." *Id.* (cleaned up).

But before courts engage in this balancing of interests, "the party asserting the privilege . . . must properly invoke the privilege by making a substantial threshold showing." *Id.* at 613 (cleaned

---

[4] *Id.*

[5] *Id.* at 5.

1  up). To fulfill the threshold requirement, "the party asserting the privilege must submit a

2  declaration or affidavit from a responsible official with personal knowledge of the matters to be

3  attested to in the affidavit." *Id.* at 613 (cleaned up). The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and
> has maintained its confidentiality; (2) a statement that the official has personally
> reviewed the material in question; (3) a specific identification of the governmental
> or privacy interests that would be threatened by disclosure of the material to
> plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully
> crafted protective order would create a substantial risk of harm to significant
> governmental or privacy interests, and (5) a projection of how much harm would be
> done to the threatened interests if disclosure were made.

9  *Kelly v. City of San Jose*, 114 F.R.D. 653, 670 (N.D. Cal. 1987); *see also Soto*, 162 F.R.D. at 613.

10  "A strong affidavit would also describe how the plaintiff could acquire information of equivalent

11  value from other sources without undue economic burden." *Soto*, 162 F.R.D. at 613.

12      "If the court concludes that a defendant's submissions are not sufficient to meet the threshold

13  burden, it will order disclosure of the documents in issue." *Id.* "If a defendant meets the threshold

14  requirements, the court will order an *in camera* review of the material and balance each party's

15  interests." *Id.* When balancing the parties' interests, the court considers, but is not limited to, the

16  following factors:

> (1) The extent to which disclosure will thwart governmental processes by
> discouraging citizens from giving the government information; (2) the impact upon
> persons who have given information of having their identities disclosed; (3) the
> degree to which government self-evaluation and consequent program improvement
> will by chilled by disclosure; (4) whether the information sought is factual data or
> evaluative summary; (5) whether the party seeking discovery is an actual or
> potential defendant in any criminal proceeding either pending or reasonably likely
> to follow from the incident in question; (6) whether the police investigation has
> been completed; (7) whether any intradepartmental disciplinary proceedings have
> arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-
> frivolous and brought in good faith; (9) whether the information sought is available
> through other discovery or from other sources; (10) the importance of the
> information sought to the plaintiff's case.

25  *Kelly*, 114 F.R.D. at 663 (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

26      On May 23, 2023, the City produced (apparently to the plaintiff) a declaration from Emily

27  Hung, San Leandro City Human Resources Director, that states that "Officer Pantoja's

28  employment matter/administrative appeal is still ongoing and has not been resolved." The City

1     asserts that "[t]here may be procedural rules that need to be observed in an administrative

2     appeal/employment case."[6] This is not the required "substantial threshold showing."

3        The City does not address most of the *Frankenhauser* factors. Some favor the plaintiff. For

4     example, factors one and two — the extent that disclosure thwarts government processes by

5     discouraging citizens from giving information and the impact on those citizens from having their

6     identities disclosed — support disclosure because presumably, that information has been disclosed

7     to the plaintiff. A protective order would preserve any privacy interest. The third factor — the

8     degree to which government self-evaluation and consequent program improvement will be chilled

9     by disclosure — also supports disclosure. *Doe v. Gill*, No. C 11–04759 CW (LB), 2012 WL

10     1038655, at *3 (N.D. Cal. Mar. 27, 2012) (rejecting defendants' "chilling effect" argument); *Soto*,

11     162 F.R.D. at 613–14 ("[A] general assertion that a police department's internal investigatory

12     system would be harmed by disclosure of the documents is insufficient to meet the threshold test

13     for invoking the official information privilege.") (cleaned up); *Kelly*, 114 F.R.D. at 672

14     ("[D]efendants cannot meet their burden simply by asserting, without empirical support, that

15     officers will refuse to cooperate with Internal Affairs investigations if their statements are subject

16     to even limited disclosure."); *Williams v. Cnty. of Alameda*, No. C 12–2511 SBA (MEJ), 2013 WL

17     4608473, at *2 (N.D. Cal. Aug. 28, 2013); *Watson v. Albin*, No. C-06-07767 RMW (HRL), 2008

18     WL 1925257, at *2 (N.D. Cal. Apr. 30, 2008) ("[The defendant's] arguments that disclosure

19     would discourage exhaustive internal investigations are unpersuasive. Courts in this district have

20     previously rejected such claims, and there is no reason to depart from that reasoning here.")

21     (collecting cases). Factors four through six and eight through ten also favor the plaintiff.

22        The City's argument implicates the seventh factor — whether any intradepartmental

23     disciplinary proceedings have arisen or may arise from the investigation — but the City makes

24     only the conclusory assertion that it "may" implicate Officer Pantoja's appeal. The plaintiff points

25     out that in *McCoy v. City of Vallejo*, the court ordered disclosure of an internal-affairs report that

26

27     ───────────────

28     [6] *Id.* at 2, 5 (the plaintiff said that he had not received the declaration by May 26, 2023, but the City said it produced it on May 23). The declaration was not submitted with the letter brief.

the officer had not seen yet.[7] No. 2:19-cv-1191-JAM-CKD, 2021 WL 6127043, at *4–5 (E.D. Cal. Dec. 28, 2021). The City distinguishes *McCoy* as involving relevant documents and characterizes the discovery here as irrelevant.[8] As discussed above, it is relevant.

In sum, the majority of the *Frankenhauser* factors support disclosure, especially given that this balancing is "moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 661.

## 2.2    Deliberative-Process Privilege

Federal law recognizes the deliberative-process privilege, which "shields from public disclosure confidential inter-agency memoranda on matters of law or policy." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988) (citing *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)). Under the privilege, a government can withhold documents or prevent testimony that "reflect[s] advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The primary purpose of the privilege is to "prevent injury to the quality of agency decisions" where "'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (quoting S. Rep. No. 813, p. 9). Its other purposes include to "protect against premature disclosure of proposed policies before they have been finalized or adopted" and "to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

There are two requirements to establish the applicability of the privilege. *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1121 (N.D. Cal. 2003). First, the document or testimony "must be predecisional — i.e., it must have been generated before the adoption of [a] policy or decision." *FTC*, 742 F.2d at 1161; *see also Sears*, 421 U.S. at 152 (noting that "communications

---

[7] *Id.* at 3.

[8] *Id.* at 5.

United States District Court
Northern District of California

1   made after the decision and designed to explain it" are not privileged). Second, the document or

2   testimony "must be deliberative in nature, containing opinions, recommendations, or advice about

3   . . . policies [or decisions]." *FTC*, 742 F.2d at 1161.

4       "For the deliberative prong," as one court has put it, "the central question is not whether the

5   information at issue bears a causal connection to a final determination, but is rather whether the

6   requested information independently 'reflects' the deliberative process itself." *McGrady v. Mabus*,

7   635 F. Supp. 2d 6, 18 (D.D.C. 2009) (citing *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 569 F.3d

8   434, 444 (D.C. Cir. 2009) ("Only those portions of a predecisional document that reflect the give

9   and take of the deliberative process may be withheld.") (cleaned up)). For this reason, "[p]urely

10  factual material that does not reflect deliberative processes is not protected;" nonetheless, factual

11  material that "is so interwoven with the deliberative material that it is not severable" is protected.

12  *FTC*, 742 F.2d at 1161. While "[f]actual material generally is not considered deliberative, . . . the

13  fact/opinion distinction should not be applied mechanically. Rather, the relevant inquiry is

14  whether 'revealing the information exposes the deliberative process.'" *Sanchez v. Johnson*, No. C-

15  00-1593 CW (JCS), 2001 WL 1870308, at *5 (N.D. Cal. Nov. 19, 2001) (quoting *Assembly of the*

16  *State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992)). "The court must . . . take

17  into account the deliberative process as a whole, and whether the disclosure of even factual

18  material would reveal a decisionmaker's mental process." *Hajro v. U.S. Citizenship & Immigr.*

19  *Servs.*, 832 F. Supp. 2d 1095, 1112 (N.D. Cal. 2011), *rev'd in part on other grounds by* 811 F.3d

20  1086 (9th Cir. 2016); *see also Nat'l Wildlife*, 861 F.2d at 1118–19.

21      "[E]ven if established, the privilege can be overcome because it is a qualified privilege; that is,

22  '[a] litigant may obtain deliberative materials [or information] if his or her need for the materials

23  [or information] and the need for accurate fact-finding override the government's interest in non-

24  disclosure.'" *N. Pacifica*, 274 F. Supp. 2d at 1122 (quoting *FTC*, 742 F.2d at 1161).

25          In deciding whether the qualified deliberative process privilege should be overcome,
        a court may consider the following factors: (1) the relevance of the evidence[,] (2)

26      the availability of other evidence, (3) the government's role in the litigation, and (4)
        the extent to which disclosure would hinder frank and independent discussion

27      regarding contemplated policies and decisions. Other factors that a court may
        consider include: (5) the interest of the litigant, and ultimately society, in accurate

28

1
2
judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.

3
*Id.*

4      Courts have held that the deliberative-process privilege generally does not apply in civil-rights

5   lawsuits to protect from disclosure internal-affairs documents, investigations, and records of

6   witness/police officer statements, as these routinely generated communications are not designed to

7   contribute to the formulation of important public policy. *Soto*, 162 F.R.D. at 612–13 ("The

8   'deliberative process' privilege, closely related to the self-critical analysis privilege, is also

9   inappropriate for use in civil rights cases against police departments."); *Pittman v. Cnty. of San*

10  *Diego*, Civil No. 09-CV-1952-WQH(WVG), 2010 WL 3733867, at *3 (S.D. Cal. Sept. 17, 2010),

11  *reconsidered on other grounds*, 2010 WL 4570252 (S.D. Cal. Nov. 3, 2010). The City cites no

12  opinions applying the privilege in a civil-rights case.[9] *See Duenez v. City of Manteca*, No. 2:11-cv-

13  1820 LKK AC, 2013 WL 684654, at *12 (E.D. Cal. Feb. 22, 2013) ("Defendant cites to no

14  controlling authority applying the deliberative process privilege to the [internal investigative]

15  documents sought by way of this RFP in the context of a civil rights case.").

16      It is not clear that the six withheld documents implicate the deliberative-process privilege. "As

17  originally developed, the deliberative process privilege was designed to help preserve the vigor and

18  creativity of the process by which government agencies formulate important public *policies*." *Kelly*,

19  114 F.R.D. at 658. It was not designed to protect from disclosure mere "communications that might

20  contribute to the making of any 'decision' by a public official." *Id.* at 659. The withheld documents

21  all seemingly involve only Officer Pantoja's termination and do not involve the development of

22  municipal policy. *See Pittman*, 2010 WL 3733867, at *3 ("The deliberative process privilege does

23  not apply to the requested documentation because the internal affairs investigation does not reflect

24  discussion among those responsible for governmental decision-making. Rather, the documentation

25  includes Plaintiffs' complaints, the names of the deputies involved, witnesses identified, along with

26

27
────────────────
28  [9] *Id.* (citing only *Hongsermeier v. Comm'r*, 621 F.3d 890, 904 (9th Cir. 2010), a taxpayer lawsuit seeking a redetermination of a tax deficiency assessed by the IRS).

findings and conclusions regarding the specific incident between Plaintiffs and the deputies.");

*Kelly*, 114 F.R.D. at 658. In light of the principle that privileges must be narrowly construed

because they "derogate the search for truth," *Kelly*, 114 F.R.D. at 659 (citing *United States v. Nixon*,

418 U.S. 83, 710 (1974)), the City's unsupported statement — that the privilege "may apply" to

"some of the records" — does not bring the withheld documents within the privilege's protections.

## CONCLUSION

The court grants the plaintiff's discovery request and orders the City to produce the withheld

documents pursuant to the protective order.

**IT IS SO ORDERED.**

Dated: July 13, 2023

_____

LAUREL BEELER
United States Magistrate Judge