UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SORRELL SHIFLETT, | Case No. 21-cv-07802-LB |
| Plaintiff, | |
| v. | **ORDER REGARDING SANCTIONS FOR UNDISPUTED SPOLIATION** |
| CITY OF SAN LEANDRO, et al., | Re: ECF No. 90 |
| Defendants. | |

## INTRODUCTION

The plaintiff sued the City of San Leandro and two San Leandro police officers, Anthony Pantoja and Ismael Navarro, claiming excessive force and other civil-rights violations after Officer Pantoja struck him with a baton and Officer Navarro tased him during an encounter in October 2019. The plaintiff was mentally disabled as a result of a 2008 traumatic brain injury (TBI) and allegedly suffered significant additional injuries as a result of this incident, including brain bleeds, strokes, and a dislocated shoulder.[1] The plaintiff has moved for terminating sanctions (in the form of a default judgment) on the ground that the defendants destroyed evidence: (1) body-camera

---

[1] Am. Compl. – ECF No. 35 at 5–7 (¶¶ 17, 23–27) (facts about incident), 10–13 (¶¶ 33–47) (claims of excessive force, unlawful seizure, a Title II ADA violation, and a *Monell* claim). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents and, for depositions, to the numbers at the bottom.

footage from two officers (including Officer Navarro) that was the only video evidence showing the use of force; (2) the log showing Officer Navarro's use of his taser; and (3) the use-of-force review that the Department conducts after any use of force.[2] The defendants concede the loss of evidence but contend that terminating sanctions are not appropriate because their actions were inadvertent: the videos were purged automatically, and there was no taser log or a use-of-force report. The defendants ask for an evidentiary hearing to develop any facts needed to prove inadvertence.[3] The court grants the motion for sanctions, denies terminating sanctions, and at minimum will allow the plaintiff to argue the shoddy investigation to the jury.

## STATEMENT

The incident occurred on October 6, 2019, and culminated in the plaintiff's arrest for possession of two fixed double-edged throwing knives and 17.46 grams of methamphetamine. He was not charged criminally.[4] The encounter began at about 2 a.m., when Officers Navarro and Pantoja responded to a dispatch call about two suspicious males walking near Johnson and Pearson Street in San Leandro.[5] The parties' accounts differ about what happened next.

Officer Navarro arrived first, made contact through a consensual stop, had no reasonable suspicion for the stop, ran a check, found that the plaintiff was on probation (but without a search condition), and asked the plaintiff (who was dressed in a karate gi) whether he had a weapon.[6] The plaintiff said he had a throwing knife and agreed to a pat search. At this point, Officer Navarro believed that he had reasonable suspicion to detain the plaintiff, asked the plaintiff to put his hands behind his back, and began walking him to the patrol car. The plaintiff then ran.[7] The plaintiff took a

---

[2] Mot. – ECF No. 90 at 4.

[3] Opp'n – ECF No. 93 at 4.

[4] *Id.* at 5; Joint Case-Management Statement – ECF No. 83 at 3. This order cites evidence when provided and cites case filings occasionally when the facts are undisputed.

[5] CAD Rep., Ex. A to Robinson Decl. – ECF No. 93-1 at 7; Mot. – ECF No. 90 at 8 (describing CAD call thusly); Opp'n – ECF No. 93 at 5 (same; label of 912 means "suspicious person").

[6] Navarro Dep., Ex. 7 to Buelna Decl. – ECF No. 90-7 at 5:16–6:15 (pp. 27:16–28:15), 7:22–8:3 (pp. 29:22–30:3); 9:13–10:11 (pp. 31:13–32:11), 12:14–17 (p. 34:14–17), 26:3–27:23 (pp. 48:3–49:23).

[7] *Id.* at 30:9–33:14 (pp. 52:9–55:14).

fighting stance and did not comply with the officers' orders to surrender.[8] Officer Pantoja struck the plaintiff once on the hand with his baton. Officer Navarro used his taser once (which resulted in the plaintiff's falling down and hitting his head), does not recall whether he warned the plaintiff, and did not document a warning in his report.[9] Officer Navarro's practice is to document in his report how many times he pulled the taser's trigger, but he did not do so here.[10] Officer Navarro did not suspect that the plaintiff was mentally disabled, did not see the large scar on his forehead, and did not document in his report that the plaintiff was screaming, "I'm disabled" during the arrest.[11] He agreed that in a photograph taken shortly after the incident, the scar was large and "readily apparent."[12]

Officer Pantoja added that he struck the plaintiff with a baton once on his hand and, after Officer Navarro tased the plaintiff, twice on his right leg.[13]

The plaintiff suffered a TBI in 2008 that left him in a coma for nine months, required a craniotomy and significant rehabilitation, and left him with slow, stuttered speech and a large scar that covers the front of his forehead to the back of his head.[14] The plaintiff, who has a guardian ad litem, submitted his video deposition, which shows his affect (characterized by his counsel as a "readily apparent" disability, which is fair, but not necessarily dispositive about how he appeared to the officers on October 6).[15] That night, he was dressed as a ninja from a cartoon anime called Naruto.[16] He cannot do simple math, read a children's book, and has a "damaged" brain.[17] He uses

---

[8] *Id.* at 38:8–13 (p. 60:8–13), 39:7–14 (p. 61:7–14), 40:6–18 (p. 62:6–18).

[9] *Id.* at 42:1–43:10 (pp. 64:1–65:10), 49:7–19 (p. 71:7–19), 50:19–52:8 (pp. 72:19–74:8).

[10] *Id.* at 57:16–23 (p. 79:16–23).

[11] *Id.* at 23:3–13 (p. 45:3–13), 25:2–19 (p. 47:2–19), 61:6–22 (p. 83:6–22).

[12] *Id.* at 88:17–25 (p. 120:17–25); Mot. – ECF No. 90 at 12 (characterizes photograph as being taken "shortly after the incident").

[13] Pantoja Dep., Ex. 9 to Buelna Decl. – ECF No. 90-9 at 50:14–25 (p. 71:14–25).

[14] Angelone Rep., Ex. 5 to Buelna Decl. – ECF No. 90-5 at 4–5.

[15] Shiflett Dep., Ex. 4 to Buelna Decl.; Order – ECF No. 73; Mot. – ECF No. 90 at 6 n.1. In their briefs and in the video deposition, the parties seemingly do not dispute the plaintiff's cognitive limitations.

[16] Mot. – ECF No. 90 at 7 (characterizing photographs excerpted on the page); Shiflett Dep., Ex. 3 to Buelna Decl. – ECF No. 90-3 at 4:7–5:20 (pp. 73:7–74:20).

[17] Mot. – ECF No. 90 at 7 (citing Shiflett Dep. at p. 12). The written deposition was not filed, but the video deposition was lodged as Exhibit 4 to the Buelna declaration.

United States District Court
Northern District of California

1    methamphetamine to help him feel good.[18] He suffered multiple brain bleeds after the incident and,

2    among other issues, his short-term memory — already affected after the 2008 incident — is

3    worse.[19] He reports that "two officers [] hit me [with] billy clubs. That way and that way and my

4    head. And then nine of them tased me. And then they pulled my arms all the way . . . back and put

5    my teeth on the concrete. And they tried to put me in the hospital."[20]

6         There are three spoliation issues resulting from the following missing evidence: video footage

7    from the body-worn cameras for Officer Navarro and Lieutenant Randy Brandt, the excessive-

8    force review, and the log of Officer Navarro's use of his taser.

9

10   **1.   Video Footage**

11        Four officers activated their body-worn cameras during the encounter on October 6: the two

12   defendant officers (Officers Navarro and Pantoja), Lieutenant Brandt, and Officer Alina Thompson.

13   Officer Pantoja did not activate his camera during the events and turned his camera on only when he

14   was handcuffing the plaintiff. His footage thus did not capture the incident.[21] Officer Navarro

15   activated his camera when he arrived on the scene on at 2:36:03 a.m., stopped recording at 2:45:47

16   a.m., and thus captured the incident.[22] Lieutenant Brandt activated his camera when he arrived on

17   scene at 2:26:19 a.m. and stopped recording at 2:42:02 a.m., presumably also capturing the

18   incident.[23] The defendants no longer have the Navarro and Brandt videos, which are the only videos

19   that would have shown the defendants' encounter with the plaintiff and their use of force. The

20   following is the record about what happened to the videos.

21

22

23

24        [18] Shiflett Dep., Ex. 6 to Buelna Decl. – ECF No. 90-6 at 3:14–4:10 (pp. 150:14–151:10).

25        [19] Angelone Rep., Ex. 5 to Buelna Decl. – ECF No. 90-5 at 4–6.

26        [20] Shiflett Dep., Ex. 3 to Buelna Decl. – ECF No. 90-3 at 3:7–19 (p. 14:7–19).

27        [21] Pantoja Dep., Ex. 9 to Buelna Decl. – ECF No. 90-9 at 25:1–21 (p. 46:1–21).

         [22] Navarro Audit Trail, Ex. B to Robinson Decl. – ECF No. 93-1 at 9.

28        [23] Brandt Audit Trail, Ex. G to Robinson Decl. – ECF No. 93-1 at 53–54.

United States District Court
Northern District of California

Officer Navarro viewed his footage when writing his report.[24] The audit trail shows that it was watched four times, once by Lieutenant Brandt.[25] At the end of his shift at 7:42:18 a.m., he plugged his camera into the docking station, which meant that the video was uploaded automatically.[26] The system deleted the video from the camera, created an evidence record, and assigned it for automatic deletion on October 5, 2020, at 2:36:03 a.m., which is exactly one year after Officer Navarro activated the camera. It then was deleted on that date.[27]

This resulted in part from a system anomaly: Officer Navarro was using a camera that had not been assigned to him officially in the evidence system, and as a result, the system did not categorize videos that he uploaded as assigned to him. That meant that it was not tagged under the system's new "auto-tag" feature and was deleted automatically after one year.[28] (But this apparently would not have made a difference here: the auto-tag feature assigned a one-year retention date to Office Brandt's video, which the system recognized as resulting from a camera assigned to him, and then deleted it one year later.[29])

If the videos had been tagged as a felony arrest, they would have been retained for seven years.[30] Officer Navarro did not tag the video and instead relied on his understanding that he did not have to do so under the department's new auto-tag policy.[31] Similarly, Lieutenant Brandt did not tag his video.[32] Before the auto-tag was implemented, officers were responsible for manually tagging videos and they still could after the auto-tagging feature was implemented.[33] Officer Pantoja, for example,

---

[24] Navarro Dep., Ex. C to Robinson Decl. – ECF No. 93-1 at 18 (pp. 99:7–100:9), 20 (p. 107:19).

[25] Navarro Audit Trail, Ex. B to Robinson Decl. – ECF No. 93-1 at 9–10.

[26] Navarro Dep., Ex. C to Robinson Decl. – ECF No. 93-1 at 18 (p. 100:10–19).

[27] Navarro Audit Trail, Ex. B to Robinson Decl. – ECF No. 93-1 at 9–10.

[28] Gordoa Decl., Ex. D to Robinson Decl. – ECF No. 93-1 at 24–25 (¶¶ 1–8).

[29] Brandt Audit Trial, Ex. G to Robinson Decl. – ECF No. 93-1 at 53–54.

[30] Retention Policy, Ex. I to Robinson Decl. – ECF No. 93-1 at 59.

[31] Navarro Dep., Ex. C to Robinson Decl. – ECF No. 93-1 at 17 (p. 94:10–16), 20 (p. 107:15–17).

[32] Brandt Audit Trial, Ex. G to Robinson Decl. – ECF No. 93-1 at 53–54.

[33] Olivera Dep., Ex. F to Robinson Decl. – ECF No. 93-1 at 43 (p. 23:5–8), 44 (p, 30:15–21); Opp'n – ECF No. 93 at 8–9 (characterizing record).

correctly tagged his video as a felony arrest, and it was preserved.[34] The import of the defendants' testimony is that if an officer does not tag the uploaded footage, it will purge automatically after a year.[35] There was another opportunity potentially for Officer Navarro to tag the video when the camera was assigned to him officially on October 24, 2019, but he did not tag the video.[36]

The system also allowed supervisors to manually update the tags of footage to change the retention policy. For example, if the court requested evidence (such as in a criminal case), then the supervisor could change the tag.[37] Here, there was no government tort claim (within the required six months), and the lawsuit (with only federal claims) was filed on October 5, 2021, just before the two-year statute of limitations expired (and after the purge of the videos).[38]

## 2. Taser Log

Officer Navarro used an X26 Taser. When it is connected to a computer, a log of its use is uploaded and kept indefinitely. The log cannot be removed from the system without creating a record of the removal. The system does not have the log. This has never happened in any other case. Officer Navarro's other taser logs are not missing, just the ones from this incident.[39]

## 3. Use-of-Force Review

When an officer uses force, the police department undertakes a use-of-force review. The officer notifies a supervisor and prepares certain reports. The reports — together with video footage, photographs from the scene, and the taser log — are put into a software platform called Blue Team, and a use-of-force report (known as a Blue Team report) is generated.[40]

---

[34] Pantoja Dep., Ex. 9 to Buelna Decl. – ECF No. 90-9 at 29:1–14 (p. 50:1–14).

[35] Gordea Dep., Ex. 13 to Buelna Decl. – ECF No. 90-13 at 13:14–14:3 (pp. 20:14–21:3).

[36] Navarro Audit Trail, Ex. 18 to Buelna Decl. – ECF No. 90-18 at 3 (#17).

[37] Gordea Dep., Ex. K to Robinson Decl. – ECF No. 93-1 at 73 (p. 37:1–6).

[38] Compl. – ECF No. 1.

[39] Olivera Dep., Ex. 19 to Buelna Decl. – ECF No. 90-19 at 16:22–21:21 (pp. 63:6–68:21); Olivera Decl., Ex. M to Robinson Decl. – ECF No. 93-1 at 84 (¶ 6).

[40] Olivera Dep., Ex. 19 to Buelna Decl. – ECF No. 90-19 at 25:12–27:12 (pp. 86:12–88:12).

Officers Navarro and Pantoja testified that they notified their supervisors that they used force.[41] The department did not investigate further, and no use-of force report was created. It is impossible to remove a use-of-force report from the system without creating a record of removal.[42]

### 4. Procedural History

The court has federal-question jurisdiction. 28 U.S.C. § 1331. All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c)(1).[43] The court held a hearing on December 14, 2023.

### GOVERNING LAW

Before Rule 37 was revised in 2015, courts could issue sanctions for spoliating electronically stored information (ESI) under their inherent authority or Rule 37. *Clear-View Techs., Inc. v. Rasnick*, No. 5:13–cv–02744–BLF, 2015 WL 2251005, at *7 (N.D. Cal. May 13, 2015) (courts "may issue sanctions for spoliation under two authorities," and "[w]here Rule 37 does not apply, the court has additional discretion under its inherent authority to respond to abusive litigation practices"). But after the 2015 amendments, courts cannot rely on their inherent authority to issue sanctions for failing to preserve electronically stored information. *Newberry v. Cnty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018) (the "detailed language of Rule 37(e) 'therefore foreclose[d] reliance on inherent authority' to determine whether terminating sanctions were appropriate") (quoting Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment); *Fiteq Inc v. Venture Corp.*, No. 13-cv-01946-BLF, 2016 WL 1701794, at *3 (N.D. Cal. Apr. 28, 2016) ("the Advisory Committee's Notes to Rule 37(e) explicitly foreclose" relying on inherent authority to impose spoliation sanctions).

---

[41] Navarro Dep., Ex. 7 to Buelna Decl. – ECF No. 90-7 at 67:11–16 (p. 89:11–16); Pantoja Dep., Ex. L to Robinson Decl. – ECF No. 93-1 at 79 (p. 110:10–19).

[42] Olivera Decl., Ex. M to Robinson Decl. – ECF No. 93-1 at 83–84 (¶¶ 2–4).

[43] Consents – ECF Nos. 5, 12.

United States District Court
Northern District of California

1    Rule 37(e) has three requirements to show that electronically stored information (ESI) was

2    spoliated: "(1) the 'electronically stored information' at issue 'should have been preserved in the

3    anticipation or conduct of litigation'; (2) that information 'is lost because a party failed to take

4    reasonable steps to preserve it'; and (3) 'it cannot be restored or replaced through additional

5    discovery.'" *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 WL

6    2957133, at *3 (N.D. Cal. May 23, 2016) (quoting Fed. R. Civ. P. 37(e)).

7    Rule 37(e)(1) addresses the sanctions for spoliation: the court "may order measures no greater

8    than necessary to cure the prejudice." Rule 37(e)(2) provides that the court can issue the following

9    sanctions where a party intentionally destroys information: (1) a presumption "that the lost

10   information was unfavorable to the party;" (2) a jury instruction "that it may or must presume the

11   information was unfavorable to the party;" or (3) a dismissal or default judgment.

12   Under Rule 37(e)(2), "intent . . . means the evidence shows, or it is reasonable to infer, that a

13   party purposefully destroyed evidence to avoid its litigation obligations. *Facebook, Inc. v. OnlineNIC*

14   *Inc.*, No. 19-cv-07071-SI (SVK), 2022 WL 2289067, at *6 (N.D. Cal. Mar. 28, 2022) (cleaned up).

15   "Relevant factors [concerning intent] can include, *inter alia*, the timing of the destruction, the method

16   of deletion (*e.g.*, automatic deletion vs. affirmative steps of erasure), selective preservation, the

17   reason some evidence was preserved, and, where relevant, the existence of institutional policies on

18   preservation." *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *6 (C.D.

19   Cal. July 22, 2020). But, in any case, "[n]egligence — even gross negligence — in failing to retain

20   relevant evidence is not sufficient to support an adverse inference under Rule 37(e)(2)." *Meta*

21   *Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1238 (N.D. Cal. 2022).

22   For example, in *Phan v. Costco Wholesale Corp.*, the defendant in a slip-and-fall personal-

23   injury case failed to preserve a video of the fall, but the plaintiff did not submit evidence that the

24   defendant intentionally deleted the video. No. 19-cv-05713-YGR, 2020 WL 5074349, at *4 (N.D.

25   Cal. Aug. 24, 2020). The failure to preserve the video "indicate[d] sloppiness, but not necessarily

26   intent." The court thus denied a request for the more severe sanctions available under Rule 37(e)(2).

27   *Id.* Instead, the court held that the jury should be instructed — consistent with California's CACI

28   204 — to determine whether the destruction was intentional and whether the video was unfavorable

1    to the defendant. *Id.* On the other hand, in *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, the

2    court held that an "explicit agreement to avoid communicating electronically suggest[ed] a shared

3    intent to keep incriminating facts out of evidence," and that the explanation that several individuals

4    "happened to have a habit of routinely deleting text messages" was unlikely. No. 15-cv-1893-HRL,

5    2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016). On these facts, the court issued a permissive

6    adverse-inference instruction as a sanction under Rule 37(e)(2). *Id.* at *3–4.

7        There are three types of adverse-inference instructions under Rule 37 (listed from harshest to

8    most lenient): (1) an instruction "that certain facts are deemed admitted and must be accepted as

9    true;" (2) "a mandatory presumption;" and (3) an instruction that "permits (but does not require) a

10   jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Apple*

11   *Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012) (cleaned up); *see also Dae*

12   *Kon Kwon v. Costco Wholesale Corp.*, 469 F. App'x 579, 580 (9th Cir. 2012) ("A fact finder may

13   draw an inference against any party that destroys or despoils evidence, but that inference is

14   permissive rather than mandatory.").

15       For terminating sanctions, the Ninth Circuit has set forth a five-factor test: (1) the public's

16   interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk

17   of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on

18   their merits; and (45) the availability of less drastic sanctions. *Leon v. IDX Sys. Corp.*, 464 F.3d

19   951, 958 (9th Cir. 2006).

20                                **ANALYSIS**

21       The threshold issue for Rule 37(e) sanctions is whether electronically stored evidence was

22   spoliated. The defendants do not contest that evidence was spoliated: it was. Instead, they oppose

23   the plaintiff's proposed remedy — terminating sanctions[44] — on the ground that the record does not

24   support intentional destruction of evidence that warrants that remedy.[45] The court does not order

25   terminating sanctions, at least now: the video footage was purged under an automatic process, and

26

27   [44] Mot. – ECF No. 90 at 1; Reply – ECF No. 98 at 9.

28   [45] Opp'n – ECF No. 93 at 12.

United States District Court
Northern District of California

the (inexplicable) failure to upload the taser data and to conduct a use-of-force review is shoddy (and can be argued to the jury) but is not (again on this record) demonstrably intentional spoliation. This sanction is "no greater than necessary to cure the prejudice." Fed. R. Civ. P. Rule 37(e)(1).

This is not to minimize the (again inexplicable) systemic failures that attach to this case. First, there was a felony arrest, and the footage should have been tagged and preserved for seven years. Second, the failure to preserve video footage involved two officers, not one, and they are the only officers with footage that shows what happened. Third, another officer managed to tag his footage appropriately, but also inexplicably did not turn on his camera until the officers handcuffed the plaintiff. Fourth, the taser log does not exist, the information is not in the police report, and only this incident is missing, not others. Fifth, there was no use-of-force review, which seemingly would have captured the taser log and the video footage in the Blue Team use-of-force report. This is not one error: it is a cascade of errors. But this can be argued to the jury.

The plaintiffs — citing *Estate of Hill v. NaphCare, Inc.* — nonetheless contend that terminating sanctions are appropriate because the defendants' acts amount to selective preservation of evidence.[46] No. 2:20-cv-00410-MKD, 2022 WL 1464830 (E.D. Wash. May 9, 2022).

In *Hill*, a pretrial detainee — booked for possession of a controlled substance and monitored for withdrawal — died when she suffered a ruptured intestine that caused gastric fluids to leak into her abdomen. Her estate sued for failure to provide constitutionally adequate medical care under 42 U.S.C. § 1983 and negligence. *Id.* at *1–3. Cameras continuously monitored her housing on medical watch. *Id.* at *3. In the case of an in-custody death, it was standard operating procedure to preserve video evidence that otherwise would have been overwritten within sixty days. *Id.* at *4. The jail preserved some video evidence, but not key videos that would have shown the jail's monitoring of the plaintiff on the required thirty-minute intervals. *Id.* at *2, 4–5. The jail had no explanation for its selective failure to preserve evidence. Indeed, a lieutenant (presumably command staff) confirmed that the decision was necessarily conscious. *Id.* at *4–5, 13. Applying the *Leon* factors (set forth

---

[46] Mot. – ECF No. 90 at 26.

above), the court authorized terminating sanctions against the County. *Id.* at *13–16. This case is different and does not have the same purposeful, selective retention and destruction of evidence.

The plaintiff also cites *Estate of Bosco v. Cnty. of Sonoma* for the conclusion that sanctions are appropriate.[47] 640 F. Supp. 3d 915 (N.D. Cal. 2022). That case involved the in-custody suicide of a mentally ill person. *Id.* at 918. Several persons accessed the body-worn camera footage and should have tagged it for retention. A lieutenant confirmed that the video footage should have been preserved. *Id.* at 921. The footage was not preserved, allegedly because of "technical issues" surrounding the system for exporting and preserving data. *Id.* at 923. The court held that under Rule 37(e), the defendants had not taken reasonable steps to preserve the evidence because they were on notice of technical issues and should have caught the resulting missing video. *Id.* at 925–26. The jail also had stringent policies to preserve evidence for in-custody deaths. *Id.* at 926. *Bosco* supports the conclusion that spoliation sanctions are appropriate here. But the *Bosco* court rejected the plaintiff's argument for a mandatory inference instruction and instead found that a permissive instruction was appropriate under Rule 37(e)(2)(b). *Id.* at 930. The case thus does not support the case for terminating sanctions, the only sanction that the plaintiff advances.

The court thus denies the motion for a terminating sanction on this record. At minimum, the plaintiff can cross examine the defendants about the investigation and argue the facts to the jury. As part of the pretrial process, the parties must brief the range of sanctions — tethered to the facts of cases where courts have imposed sanctions — about how the spoliation affects the sanctions the court can order at trial, including a jury instruction. A terminating sanction is not off the table: it depends on how the testimony comes in.

## CONCLUSION

On this record, the court denies terminating sanctions (without prejudice to further development of the fact record at trial) but at minimum will allow argument to the jury about the investigation.

**IT IS SO ORDERED.**

---

[47] Reply – ECF No. 98 at 7.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Dated: February 10, 2024

_____

LAUREL BEELER
United States Magistrate Judge